**\*\*E-filed 07/20/2010\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GLORIA VILLEGAS

       Plaintiff,

  v.

US BANCORP, et al.,

       Defendants.

_____/

No. C 10-1762 RS

**ORDER DENYING MOTION TO DISMISS**

## I. INTRODUCTION

This case, which grows out of defendants' banking practices in making car loans, asserts three contractual and unfair business practice claims as a putative class action on behalf all persons similarly-situated to named plaintiff Gloria Villegas.  A fourth claim for relief brought by Villegas individually asserts violation of California Civil Code section 1632, which generally requires consumers to be provided translations of contract documents when consumer transactions are negotiated primarily in certain specified languages other than English.

Defendants move to dismiss the class claims, arguing that they breached no contractual or other duty.  They also challenge the claim based on the failure to provide translations by contending Civil Code section 1632 is preempted by federal law.  For the reasons set out below, the motion to dismiss will be denied.

## II.  BACKGROUND[1]

Plaintiff Gloria Villegas bought a car.  She was referred by the dealer to US Bank for the financing.  The Bank gave her a loan, which was to be repaid through automatic deductions from a new US Bank checking account.[2]  Unbeknownst to Villegas, she was also given a Reserve Line of Credit of a $1500.  Conversations between Villegas and the Bank were all conducted in Spanish; all the paperwork, however, was only provided to Villegas in English.

From August of 2008 through January of 2009, Villegas made deposits in the checking account sufficient to cover each month's payment.  In January, Villegas had still not received the registration papers for the car.  She attempted to contact the dealer, but it had gone out of business.  She contacted the Bank, and was told she could stop making payments until the registration issue was resolved.

From February through May of 2009, the Bank continued making automatic deductions from Villegas's checking account, drawing down on the reserve line of credit.  By June, the remaining available credit was $11.72 short of covering the monthly payment.  The Bank made the automatic deduction anyway, causing the account to be overdrawn.   The Bank then imposed an overdraft fee, and because Villegas never deposited funds to cover the overdraft, it continued imposing a daily overdraft fee, until it eventually "force closed" the account in August.  By that time Villegas had been charged approximately $375 on the original $11.72 overdraft.

As noted, Villegas brings this as a class action on behalf of all similarly situated US Bank customers with respect to the overdraft practices. She pleads three counts:  breach of contract, breach of the covenant of good faith and fair dealing, and unfair business practices in violation of California Business Professions Code § 17200. As also noted above, she alleges one further claim

---

[1]  The factual allegations of the complaint described herein are presumed true for the purposes of this motion.

[2]  The car loan was apparently made by defendant U.S. Bank National Association N.D, and the checking account was issued by defendant U.S. Bank National Association.  Defendant US Bancorp asserts that it is simply a holding corporation that should not have been named in this action, but it does not move separately to dismiss on that basis.  As in defendants' motion, this order will refer to the defendants collectively as US Bank or the Bank.

2

1 for relief on her own behalf only—also alleged under Business Professions Code § 17200, but in
2 this instance predicated on the alleged violation of Civil Code section 1632 arising from the Bank's
3 failure to provide her Spanish translations of her loan and checking account documents.
4 This motion to dismiss argues that (1) the first three claims all fail because Villegas cannot point to
5 any contract term the Bank breached, and (2) the fourth claim fails because Civil Code section 1632
6 is preempted by the National Bank Act, 12 U.S.C. §§ 1 et seq., and/or the Truth in Lending Act, 15
7 U.S.C. § 1601 et seq.

### III.  LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint.  See *Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  Hence, the issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 249 (9th Cir. 1997).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

3

IV.  DISCUSSION

A.  Breach of Contract

Villegas contends the Bank breached the emphasized language in the following contract term:

> ACH CANCELLATION FEE: I agree that if I arrange for automatic payments on this loan, either in this form or otherwise, and if my automatic payments are stopped for any reason not your fault, I agree to pay you an ACH cancellation fee of $50.00. **I understand that automatic payments stop**, and must be re-contracted for, **if**, for example, I close my account (without arranging for automatic payments for another account), **there is insufficient funds in the account**, or I stop payment on an automatic payment.

(Emphasis added.)

The Bank argues that this provision concerns *Villegas* agreeing to pay a fee, and that it nowhere obligates the Bank to refrain from processing an automatic debit when there are insufficient funds in the account.  The Bank points to another provision plainly explaining that it will impose an overdraft fee when it processes an "item" that causes the available balance to go negative, and notes that "items" is defined to include "pre-authorized withdrawals."

The Bank also argues that the complaint only alleges breach of a supposedly "inherent" contract term.  On that point, the Bank has misread the complaint.  Villegas's theory is that the emphasized language, "I understand that automatic payments stop . . . if . . . there is insufficient funds in the account" represents an *express* agreement by the Bank that it would not process an automatic payment if there were insufficient funds.  The complaint does further assert that "inherent" in that agreement is a "requirement" that the Bank have *procedures* in place to ensure that automatic payments are not processed when there are insufficient funds.  It is undoubtedly correct that *if* the Bank has expressly agreed not to do something, it also has an "inherent requirement" to maintain procedures to enable it live up to its promise.

The significant question is whether the language, "I understand that automatic payments stop . . . if . . . there is [sic] insufficient funds in the account" can be seen as a contractual undertaking by the Bank not to process an automatic payment when there are insufficient funds.  Presumably the Bank would argue that this language at most means that automatic payments will stop *after* the first

4

1 time a payment is rejected for insufficient funds, but the provision is at least susceptible to the
2 interpretation urged by Villegas.  As such, there is no basis to dismiss any of the first three claims
3 for relief at the pleading stage.

### B. Preemption of Civil Code 1632

The Bank contends application of section 1632 to U.S. Bank, a national bank, is preempted by the National Bank Act ("NBA") and/or the Truth in Lending Act ("TILA").   The parties are in agreement that there appears to be no case addressing the relationship between the National Bank Act and section 1632 for purposes of preemption.   Both sides look instead by analogy to cases addressing whether section 1632 is preempted by the Home Owners Loan Act, 12 U.S.C. §§1461 *et seq*. ("HOLA").  Defendants rely on *Tamayo v. World Savings Bank*, 2009 U.S. Dist. LEXIS 73298 (S.D. CA 2009) and *Paz v. Wachovia*, 2009 U.S. Dist. LEXIS 73297 (C.D. CA 2009), both of which found preemption.  Plaintiff relies on *Reyes v. Premier Home Funding*, 640 F. Supp. 2d 1147 (N.D. Cal. 2009) a decision from this district that issued about a month earlier than *Tamayo* and *Paz*, which concluded that section 1632 is *not* preempted by HOLA.  *See also, Cuevas v. Atlas Realty/Financial Services, Inc*, 2008 WL 268981, *3 (N.D.Cal. 2008) (concluding that "at least at the pleading stage" a defendant had not met its burden to show HOLA preempts section 1632).[3]

The better argument is that section 1632 is not preempted under the NBA, because it does not require lenders to provide any disclosures or other materials that are in any way substantively different from what they must provide under federal law.  The requirement to provide Spanish language translations ensures that Spanish speaking consumers will have *access* to and be able to understand the federally mandated disclosures, but it does not change the nature of, add to, or subtract from what must be disclosed.

The Bank's further argument that section 1632 is preempted by TILA is based on a supposed conflict between the *mandatory* language in section 1632 requiring translations, and *permissive*

---

[3] At the hearing, plaintiff offered an argument not presented in the papers that the Court need not choose between the competing precedents because of a distinction in the nature of preemption under the NBA and that under HOLA.  In view of the Court's conclusion that there is no preemption, it need not reach this late-presented and underdeveloped argument.

5

language in regulations under TILA allowing translations as long as English language documents are also provided upon the consumer's request. See 12 C.F.R. § 226.27. While mandatory and permissive language may conflict in some instances, here the fact that TILA regulations expressly permit translations weighs against a conclusion that the state's requirement for such translations under particular circumstances is preempted. Accordingly, the motion to dismiss the fourth claim for relief is denied.

## V. CONCLUSION

The motion to dismiss is denied. Defendants shall file an answer to the complaint within 20 days of the date of this order.

Dated: 07/20/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE